IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAY FANNING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case Number CIV-08-411-C |
| | ) |
| (1) WASHITA FREIGHT SYSTEMS, | ) |
| INC., a domestic corporation; and | ) |
| (2) LINKAMERICA CORPORATION, | ) |
| a domestic corporation, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a complaint against his previous employer alleging claims of: (1) wrongful termination in violation of the ADA; (2) wrongful termination in violation of the OADA; (3) wrongful termination in violation of Oklahoma public policy; (4) invasion of privacy; (5) intentional infliction of emotional distress; (6) negligence; and (7) tortious interference with prospective economic advantage. Defendants filed a Motion for Summary Judgment.

## BACKGROUND

Plaintiff worked for Defendant Washita Freight Systems, Inc. (Washita) as a night dispatcher. In the spring of 2006, Plaintiff was diagnosed as HIV-positive.[1] In May 2006,

---

[1] In previous filings, the Court required both parties to submit under seal all documents referencing Plaintiff's medical condition in order to protect Plaintiff's significant privacy interests. However, since that time, it has become apparent to the Court that Plaintiff is not treating his medical condition as a private affair, but has permitted such information to be easily accessible on the internet. Because of the "strong presumption in favor of public access to judicial records," Mann v. Boatright, 477 F.3d 1140, 1149 (10th Cir. 2007), and because the Court finds that Plaintiff's

Plaintiff voluntarily told Mr. Dutton, Washita's safety director, about his diagnosis. He wanted the company to know so that in case he was ever injured while at work the proper precautions would be taken to ensure employee safety. Mr. Dutton then informed Mr. Bill Hobaugh, his supervisor, about Plaintiff's condition. Mr. Hobaugh conferred with Plaintiff on Friday, May 26, 2006, about the situation. During that meeting, Mr. Hobaugh expressed displeasure that Plaintiff had not told him about his diagnosis sooner. Mr. Hobaugh also stated that he would need to speak to the corporate office to determine what procedures should be followed regarding employee safety, perhaps implying that he may need to disclose Plaintiff's condition to other employees. Throughout these conversations, Plaintiff was told that his job was not in jeopardy.

Then, over the weekend, Plaintiff accessed the email accounts of Mr. Hobaugh, Mr. Dutton, and Mr. Jason Hobaugh from his home computer in an effort to find evidence that they intended to discharge him because he was HIV-positive. Plaintiff did not have permission to do so. By reading his supervisors' email, Plaintiff discovered that the company intended to discontinue use of a particular type of truck in their day-to-day operations. Plaintiff then told another employee, Tim Madden, about this information. When Mr. Hobaugh found out about Plaintiff's actions, he called Plaintiff to his office and terminated him on May 31, 2006.

---

privacy interests do not outweigh the substantial public interest in favor of full disclosure of judicial records, the Court is not filing this Order under seal.

After Plaintiff's termination, in February 2007, Plaintiff met with Mr. Sharpton, a prospective employer, to discuss job opportunities. Plaintiff executed a written release authorizing Washita to discuss his job performance with Mr. Sharpton, who subsequently called and spoke with Mr. Dutton. Plaintiff was in the room during this phone call, which was placed on speakerphone. During the conversation, Mr. Dutton disclosed that Plaintiff was HIV-positive. Mr. Sharpton ultimately did not offer Plaintiff a job. In his rejection letter, Mr. Sharpton wrote that this was not due to the fact that he was HIV-positive.

Plaintiff argues that he was unlawfully terminated due to his medical condition. According to Plaintiff, the fact that he was terminated within a week of disclosing his condition to Washita indicates that the proffered reason is merely pretextual. Additionally, Plaintiff argues that the disclosures made by Mr. Dutton to Mr. Sharpton give rise to claims for intentional infliction of emotional distress, negligence, and tortious interference with prospective economic advantage.

## STANDARD OF REVIEW

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the litigation under applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine only if it is such that a reasonable jury could find in favor of the nonmoving party. Id. The moving party bears the burden of demonstrating the lack of a genuine issue about any material facts. Adickes v. S.H. Kress

& Co., 398 U.S. 144, 157 (1970). Once this burden is met, the nonmoving party must then respond and introduce specific facts demonstrating a genuine issue of material fact. Fed. R. Civ. P. 56(e)(2). When deciding a motion for summary judgment, the court may only consider admissible evidence and must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" Scott v. Harris, 550 U.S. 372, ___, 127 S.Ct. 1769, 1774 (2007) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995).

The Supreme Court noted that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court went on to explain that, in this situation, there could be no genuine issue of material fact because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

## **ANALYSIS**[2]

*1. Plaintiff's ADA Claim*

In order for Plaintiff to prevail on his claim of disability discrimination under the ADA, he bears the burden of proving each element of his prima facie case. Berry v. T-Mobile USA, Inc., 490 F.3d 1211, 1220 (10th Cir. 2007) (quoting Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005)). The burden then shifts to Defendants to establish a legitimate, non-discriminatory reason for Plaintiff's discharge. Id. If Defendants are successful, then the burden shifts once again to Plaintiff to demonstrate that Defendants' proffered reasons are pretextual. Id.

To make out a prima facie case of disability discrimination under the ADA, Plaintiff must demonstrate that he (1) is disabled as defined by the ADA, (2) is qualified, with or without accommodation, to perform the job, and (3) suffered discrimination because of his disability. Justice v. Crown Cork & Seal Co., Inc., 527 F.3d 1080, 1086 (10th Cir. 2008). Defendants argue that Plaintiff is not disabled according to ADA standards and that he did not suffer discrimination.

The ADA provides:

The term 'disability' means, with respect to an individual–

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

---

[2] In Plaintiff's Response to Defendants' Motion for Summary Judgment, he voluntarily withdrew his claim of invasion of privacy. As a result, the Court declines to consider that claim and deems it dismissed.

>    (B) a record of such an impairment; or

>    (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). From the information submitted to the Court, it appears that both subsections (A) and (C) might apply to Plaintiff's claims.

Analysis of Plaintiff's claim under subsection (A) requires that the Court determine: (1) whether Plaintiff's condition constitutes a physical impairment; (2) what life activity Plaintiff relies upon and whether it constitutes a major life activity; and (3) whether Plaintiff's impairment, if any, substantially limits the major life activity. Bragdon v. Abbott, 524 U.S. 624, 631 (1998). Initially, the Court notes that Plaintiff's HIV status constitutes a physical impairment. See id. at 637 (holding that the HIV virus "is an impairment from the moment of infection.").

In considering the second and third prongs, the Court may only consider those major life activities upon which Plaintiff relies. Doyal v. Okla. Heart, Inc., 213 F.3d 492, 496 (10th Cir. 2000). Based upon a thorough review of the evidence presented, it appears that the only major life activity asserted by Plaintiff is that of working. (See Pl.'s Br. at 14.) Therefore, Plaintiff must demonstrate that he is

> "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."

E.E.O.C. v. Heartway Corp., 466 F.3d 1156, 1162 (10th Cir. 2006) (quoting 29 C.F.R. § 1630.2(j)(3)(I)). The evidence presented, viewed in the light most favorable to Plaintiff, does not even demonstrate that he is unable to perform a single, particular job. In his deposition, Plaintiff testified that his condition did not prevent him from performing the essential functions of his job, nor in fact did it cause him any hardship whatsoever with respect to his job. Therefore, the Court finds that Plaintiff's condition does not substantially limit the major life activity of working.

Plaintiff could still qualify as disabled under the ADA if Defendants mistakenly believed that his condition substantially limited Plaintiff's major life activity of working. See Justice, 527 F.3d at 1086. As in the analysis under subsection (A), Plaintiff must demonstrate that Defendants believed he was unable to perform a class of jobs or a wide range of jobs in numerous classes. Id. The focus here is on the employer's subjective state of mind. Id. As the Tenth Circuit notes, "'[i]t is particularly difficult for a plaintiff to prevail on this type of claim,' which 'takes a plaintiff to the farthest reaches of the ADA.'" Id. at 1087 (quoting E.E.O.C., 466 F.3d at 1162).

Viewing the evidence presented in the light most favorable to Plaintiff, the Court finds that he has failed to demonstrate that a genuine dispute exists with respect to this issue. When Plaintiff told Mr. Dutton that he was HIV-positive, his job was not threatened in any way. Mr. Dutton told his supervisor, Bill Hobaugh, about Plaintiff's disclosure because he was concerned that there might be a potential risk to the company. Mr. Hobaugh told Plaintiff that, should a situation arise where he required medical attention, emergency

medical services would be used to reduce any risk to other employees. Mr. Hobaugh also explained that he wanted to discuss Plaintiff's situation with the corporate office to determine whether they needed to disclose any additional information to other employees for their own safety. Plaintiff argues that many of his female coworkers were concerned about his condition and that Mr. Hobaugh testified that this fear was disrupting the office. However, comments or concerns among Plaintiff's coworkers do not establish that Defendants perceived him as substantially limited in his ability to work. See Lanman v. Johnson County, Kan., 393 F.3d 1151, 1157-58 (10th Cir. 2004). There is no evidence indicating that Defendants were concerned about Plaintiff's ability to perform his job, let alone to perform a wide variety of jobs. Therefore, Plaintiff is not disabled within the meaning of the ADA.

Even if the Court were to find Plaintiff disabled, his claim would fail because there is no evidence to support a finding that Defendants discriminated against him. This prong requires Plaintiff "'to present some affirmative evidence that disability was a determining factor in the employer's decision..'" Butler v. City of Prairie Vill., Kan., 172 F.3d 736, 748 (10th Cir. 1999) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). While Plaintiff's burden is not a high one, "'it is also not empty or perfunctory.'" Id. at 749 (quoting Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 59 (4th Cir. 1995)).

Viewing the evidence in the light most favorable to Plaintiff, it appears that, when he disclosed his condition to Mr. Hobaugh, he was told that his job was not in jeopardy. Pending a decision by the corporate office, Plaintiff logged into the email accounts of Mr. Hobaugh, Mr. Jason Hobaugh, and Mr. Dutton from his home. He then disclosed

information regarding company operations found in one of those emails to Mr. Madden, another employee. When Mr. Hobaugh found out about Plaintiff's actions, he was angry and terminated him for breach of security. Mr. Hobaugh had not indicated in any way that he was considering terminating Plaintiff or moving him to another job prior to Plaintiff accessing his email account. The Court finds it highly unlikely that any employer would not terminate an employee who engages in this behavior. Plaintiff has not provided evidence sufficient to support a jury finding of discrimination, and his ADA claim will therefore be dismissed.

*2. Plaintiff's OADA Claim*

The Oklahoma Anti-Discrimination Act (OADA) provides that an employer may not discriminate against an individual on the basis of race, color, religion, sex, national origin, age, or handicap. 25 Okla. Stat. § 1302. A "handicapped person" is defined as "a person who has a physical or mental impairment which substantially limits one or more of such person's major life activities, has a record of such an impairment or is regarded as having such an impairment." Id. at § 1301.

When a plaintiff alleges discrimination on the basis of disability, it is clear that the OADA requires courts to first find that an individual is disabled, which consists of the same elements as a "disability" under the ADA. For the same reasons as set forth above in section 1, the Court finds that Plaintiff is not disabled and has not shown that he was discriminated against on the basis of disability. Therefore, Plaintiff's OADA claim will be dismissed.

*3. Plaintiff's* Burk[3] *Tort Claim*

In order for Plaintiff to prevail on his claim for wrongful discharge in violation of public policy, he must show:

> (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma public policy goal.

Vasek v. Bd. of County Comm'rs of Noble County, 2008 OK 35, ¶ 14, 186 P.3d 928, 932.

In order for Plaintiff's Burk tort claim to survive summary judgment, he must submit evidence indicating that he was discharged "in significant part for a reason that violates an Oklahoma public policy goal." As explained in the preceding sections, Plaintiff is unable to show that Defendants terminated him because of his medical condition. Therefore, Plaintiff's Burk tort claim will be dismissed.

*4. Plaintiff's Claim of Intentional Infliction of Emotional Distress*

In order for Plaintiff to prevail on his claim for intentional infliction of emotional distress, he must demonstrate that: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Computer Publications, Inc. v. Welton, 2002 OK 50, ¶ 7, 49 P.3d 732, 735. A defendant's conduct

---

[3] See Burk v. K-Mart Corp., 1989 OK 22, 770 P.2d 24.

must be so outrageous and extreme that it goes "beyond all possible bounds of decency, and ... is regarded as atrocious and utterly intolerable in a civilized community." Id. at ¶ 9, 735.

Plaintiff bases his claim on the phone conversation between Mr. Dutton and Mr. Sharpton, a prospective employer, in which Mr. Dutton disclosed that Plaintiff was HIV-positive. Based on the evidence presented, a jury could find that Defendants acted intentionally or recklessly and that Defendants' conduct caused Plaintiff's distress. The Court further finds that reasonable minds could differ with respect to whether Defendants' conduct was outrageous and extreme. According to Mr. Sharpton, he did not ask for that type of information, but instead Mr. Dutton voluntarily disclosed it. During Mr. Dutton's deposition, he testified that

> [Mr. Sharpton] said I really want to hire this guy and is there any reason why I should not hire him
> . . .
> And that's – at that time is when I said, well, he has a medical problem.

However, the Court finds that Plaintiff did not submit evidence sufficient to support a jury finding that the resulting distress he suffered was severe. During his deposition, Plaintiff testified that, as a result of Mr. Dutton's actions, he had trouble sleeping and would toss and turn at night. He also testified that he had anxiety whenever he even thought about going to look for another job. Such allegations do not rise to the level of distress such that "no reasonable person could be expected to endure it." Restatement (Second) of Torts § 46 cmt. (j) (1965). Therefore, Plaintiff's claim for intentional infliction of emotional distress will be denied.

*5. Plaintiff's Negligence Claim*[4]

In order for Plaintiff to prevail on his claim for negligence, Plaintiff must show: "(1) existence of a duty on the part of the defendant to protect plaintiff from injury; (2) defendant's breach of the duty; and (3) injury to plaintiff proximately resulting therefrom." Scott v. Archon Group, L.P., 2008 OK 45, ¶ 17, 191 P.3d 1207, 1211. Determining whether a duty exists is a question of law for the Court. Id. Oklahoma law has long recognized that:

> a person owes a duty of care to another person whenever the circumstances place the one person in a position towards the other person such that an ordinarily prudent person would recognize that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she may cause danger of injury to the other person.

Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶ 13, 160 P.3d 959, 964. Additionally, Plaintiff must provide evidence of injury. Oklahoma law provides that "damages for mental anguish are recoverable only if they are 'produced by, connected with or the result of physical suffering or injury to the person enduring the mental anguish.'" Wilson v. Muckala, 303 F.3d 1207, 1213 (10th Cir. 2002) (quoting Ellington v. Coca Cola Bottling Co. of Tulsa, 1986 OK 11, ¶ 3, 717 P.2d 109, 111). Once Plaintiff proves a prima facie case of negligence, he "is entitled to recover those damages which are foreseeable and naturally flow from the

---

[4] While Plaintiff's amended complaint referred to this claim as "negligent infliction of emotional distress" (see Dkt. No. 16), the Court has previously determined that it is actually a claim for negligence (see Dkt. No. 21), and it will therefore be analyzed as such.

defendant's negligent acts." Stroud v. Arthur Andersen & Co., 2001 OK 76, ¶ 14, 37 P.3d 783, 789.

Based on the evidence presented, the Court finds that Mr. Dutton had a duty toward Plaintiff to behave as would an ordinarily prudent person in the same situation. In providing work-related information about Plaintiff to a prospective employer, Mr. Dutton occupied a position of authority in which a reasonable person would recognize that he could injure Plaintiff were he not to act with ordinary care. It is important to note that Oklahoma law permits an employer only to "disclose information about a current or former employee's job performance to a prospective employer . . . upon request . . . and with consent of the current or former employee." 40 Okla. Stat. § 61A. Mr. Dutton was therefore not authorized to inform Mr. Sharpton about any medical conditions that do not impact Plaintiff's job performance.

A jury could also find that Plaintiff suffered injury and that his injury was foreseeable. Plaintiff testified during his deposition that he had difficulty sleeping and suffered anxiety at the thought of looking for another job. When an employer makes unauthorized statements about a former employee's medical condition to a prospective employee, the Court finds that it is foreseeable that the former employee would suffer injury such as that alleged by Plaintiff. It is immaterial whether or not Mr. Dutton knew that Plaintiff was listening to the telephone conversation. Therefore, Defendants' motion will be denied with respect to Plaintiff's negligence claim.

*6. Plaintiff's Claim of Tortious Interference with Prospective Economic Advantage*

To prevail on this claim, Plaintiff must show "'the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted.'" Wilspec Techs., Inc. v. Dunan Holding Group Co. Ltd., No. CIV-06-818-L, 2008 WL 2557760, at *3 (W.D. Okla. June 20, 2008) (quoting Boyle Servs., Inc. v. Dewberry Design Group, Inc., 2001 OK CIV APP 63, ¶ 6, 24 P.3d 878, 880. To show the existence of a valid business relationship or expectancy, "'the plaintiff must show either that prospective economic advantage would have been achieved had it not been for such interference or that there was, in view of all the circumstances, a reasonable assurance thereof.'" Crystal Gas Co. v. Okla. Natural Gas Co., 1974 OK 34, ¶ 25, 529 P.2d 987, 990 (quoting 45 Am. Jur. 2d Interference § 6).

Plaintiff submitted an affidavit from Mr. Sharpton indicating that he intended to hire Plaintiff but the disclosures made by Mr. Dutton led him to question Plaintiff's ability to perform the job. While he states that none of the disclosures alone were the primary reason he chose not to hire Plaintiff, they created negative feelings about Plaintiff's abilities and therefore his decision to hire another applicant was "based in large-part on the disclosures made by Mr. Dutton." (Pl.'s Resp., Ex. 4.) Defendants argue that Mr. Sharpton's affidavit contradicts an earlier "Job Applicant Rejection Letter" he wrote to Plaintiff. This letter indicated that Mr. Dutton disclosed Plaintiff's medical condition but that this was not the

14

reason that Mr. Sharpton chose not to hire him. Therefore, Defendants contends that Plaintiff is simply trying to create sham issues of fact to survive summary judgment.

Courts "should not disregard a party's evidence simply because it conflicts with his or her prior sworn statements; however, such evidence may be disregarded when a court concludes that the evidence is merely an attempt to create a sham fact issue." Martinez v. Barnhart, 177 F.App'x 796, 800 (10th Cir. 2006). In deciding whether a plaintiff is attempting to create a sham fact issue, courts must examine three factors: "whether: '(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain.'" Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 973 (10th Cir. 2001).

Applying these factors to the present case, the Court finds that Mr. Sharpton's affidavit is not intended merely to create a sham issue of fact. There is no indication that Mr. Sharpton used the services of an attorney in drafting the rejection letter and he was clearly not under oath or cross-examined when making those statements. While Mr. Sharpton's affidavit does not attempt to explain any ambiguities contained in his earlier letter, it does explain the situation in much greater detail and attempt to provide a much more comprehensive picture of his reasoning. Therefore, the Court finds that the affidavit is not simply intended to create a sham fact issue and it will be considered. Plaintiff has submitted facts that, if believed, could lead the jury to find in his favor.

*7. Plaintiff's Claims Against LinkAmerica*

A variety of tests are used to determine whether an entity is an employer:

> Under the common law agency inquiry, the focus is on whether the putative employer "controls the means and manner by which work is accomplished." The hybrid method combines the focus on the common law right to control with additional factors relating to the degree of economic dependence of the worker on the putative employer. [Under] [t]he third approach . . . , which is known as the "single employer;" "economic realities," or "integrated enterprise" test, courts consider the following factors: interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control.

Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1069 (10th Cir. 1998) (citations omitted). Neither party has cited authority demonstrating which test should apply here. Nevertheless, the Court finds that, based on the evidence presented, a reasonable jury could find that LinkAmerica is Plaintiff's employer. According to Plaintiff, the LinkAmerica logo is printed on both his checks and the employee handbook. In addition, Plaintiff notes that the personnel department for Washita's employees is at LinkAmerica in Tulsa and that both companies have common legal counsel in the present suit. The Court also finds noteworthy Mr. Hobaugh's comment that he needed to confer with the corporate office to determine how best to handle Plaintiff's medical condition. The Court finds that all of this evidence could support a finding that LinkAmerica is Plaintiff's employer, and therefore Plaintiff's claims against that entity will not be dismissed.

## **CONCLUSION**

Accordingly, Defendants' Motion for Summary Judgment (Dkt. No. 51) is GRANTED IN PART and DENIED IN PART. Plaintiff's claims for wrongful termination

in violation of the ADA, the OADA, and Oklahoma public policy, along with his claims for invasion of privacy and intentional infliction of emotional distress are dismissed. Plaintiff's claims for negligence and tortious interference with prospective economic advantage remain. Finally, Plaintiff's claims against LinkAmerica will remain.

    IT IS SO ORDERED this 3rd day of March, 2009.

*/s/ Robin J. Cauthron*
ROBIN J. CAUTHRON
United States District Judge